UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KAREN D. VAUGHN,                               )
                                               )
                   Plaintiff,                  )
                                               )
         -vs-                                  ) Case No. 1:16-cv-3257
                                               )
JOHN J. WERNERT, M.D., in his official         )
capacity as Secretary of the Indiana           )
Family and Social Services Administration,     )
YONDA SNYDER, in her official capacity as      )
Director of the Division of Aging of the       )
Indiana Family and Social Services             )
Administration, and JOSEPH MOSER, in his       )
official capacity as Director of the Office of )
of Medicaid Planning and Policy of             )
the Indiana Family and Social Services         )
Administration,                                )
                                               )
                   Defendants.                 )

**COMPLAINT FOR INJUNCTIVE AND DECLATORY RELIEF**

## I. Introduction

1.      This civil rights complaint for injunctive and declaratory relief is made by

a woman with a physical disability who is currently suffering significant harm as a result

of her unnecessary segregation and institutionalization.  The State of Indiana's refusal to

timely provide community services in the most integrated setting appropriate to her needs

has caused her prolonged harm:  Plaintiff, Karen D. Vaughn, has been institutionalized

in a hospital or nursing home since January 6, 2016, instead of being at home.

2.      The Indiana Family and Social Services Administration ("FSSA"), is an

Indiana state agency designated to administer and/or supervise the administration of

federal services funded and governed under the Medicaid programs.

3.      Vaughn has been living with quadriplegia for nearly forty years, and has received home-based agency care for over thirty years.  Prior to October 15, 2015, Vaughn lived at home and received home-based agency care and services pursuant to her approved Medicaid Plan of Care

4.      From October 15, 2015 through the present, the FSSA failed to compensate, establish or deliver an adequate network of providers to fulfill the services covered in Vaughn's approved Medicaid Plan of Care for home and community-based long-term care services.

5.      Vaughn was admitted to Indiana University Health Methodist Hospital ("Methodist"), in Indianapolis, Indiana in January 2016 for a short-term medical condition that was treated and resolved within a week. Yet she remained in Methodist Hospital over ten months, against her will and to her detriment, because of FSSA's failure to properly pay a provider or agencies able to meet her needs as identified in her approved Medicaid Plan of Care.

6.      On or around November 25, 2016 Vaughn was discharged from Methodist to a nursing home, where she remains against her will to this day, because of FSSA's failure to properly pay a provider, providers, or agencies able to meet her needs as identified in her approved Medicaid Plan of Care.

7.      FSSA's failure to fund and pay provider agency care at appropriate rates, and the concomitant unnecessary institutionalization of Vaughn, constitutes improper discrimination by FSSA against Vaughn upon the basis of her disability.

8.      FSSA has denied Vaughn adequate community-based services and supports in the most integrated setting appropriate for her. FSSA has also failed to furnish services to Vaughn with reasonable promptness. All of the foregoing failures and each of them have caused Vaughn to remain unnecessarily institutionalized since January 2016, kept her from returning home, and expose her to immediate, ongoing and future harm.

9.      Vaughn is at risk of suffering irreparable harm if her unnecessary institutionalization continues.

10.     Vaughn brings this action to seek redress for inadequate treatment, untimely discharge, and improper discrimination in violation of federal statutory mandates, caused by the Defendants acting under color of law.  Through this action, Vaughn seeks to enforce her rights to receive adequate health care, housing, habilitation and other services and supports in the most integrated setting appropriate to her individual needs and in accordance with professional judgment.

## II.  Jurisdiction, Venue and Cause of Action

11.     This Court has original subject matter jurisdiction of the federal questions presented herein pursuant to 28 U.S.C. §§ 1331, 1343(a), 2201, 2202; and 42 U.S.C. §§ 1983, and 12133.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), for some or all of the Defendants reside, and the events or omissions giving rise to these claims arose, in this judicial district.

13.     Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

14. Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*; Section 504 of the Rehabilitation Act of 1972 ("Section 504"), as amended 29 U.S.C. § 794, *et seq.*; and the Medicaid programs of Title XIX of the Social Security Act, 42 U.S.C. § 1396, *et seq.*; and regulations promulgated to the foregoing.

### III.  Parties

15. Plaintiff Karen D. Vaughn is an adult resident of Marion County, Indiana.

16. Defendant John J. Wernert, M.D., an adult individual, is the duly-appointed Secretary of the FSSA, and is sued in his official capacity.

17. Defendant Yonda Snyder, an adult individual, is the duly-appointed Director of the FSSA's Division of Aging, and is sued in her official capacity.

18. Defendant Joseph Moser, an adult individual, is the duly-appointed Director of the FSSA's Office of Medicaid Planning and Policy ("OMPP"), and is sued in his official capacity.

### IV.  Factual Allegations

19. FSSA is the single state agency in Indiana designated to administer and/or supervise the administration of federal services funded and governed under the Medicaid programs of Title XIX of the Social Security Act, 42 U.S.C. § 1396, *et seq.*

20. As such, FSSA is responsible for implementing and ensuring Indiana's compliance with federal Medicaid requirements. FSSA's responsibilities also include, without limitation, review of the needs and level of care required by institutionalized persons, in order to ensure that community placements are appropriate and timely; and

the coordination and provision of community-based health and support services for individuals with disabilities.

21.     The State of Indiana participates in the Medicaid program and has chosen to provide Home and Community-Based Services ("HCBS") waivers for eligible persons under its Medicaid plan, so such persons do not have to be unnecessarily institutionalized.

22.     Vaughn is eligible for Medicaid and HCBS.

23.     FSSA is a public entity within the meaning of the ADA and Section 504.

24.     Dr. Wernert has at all times relevant herein, exercised general responsibility, supervision, coordination, and oversight of the policies, practices, and operations of FSSA, including, without limitation, the care, custody, and welfare of persons with disabilities who are confined in or receive services that are funded, operated, licensed, or supervised by FSSA for the receipt of Medicaid and Medicare funds pursuant to Titles XVIII and XIX of the Social Security Act.

25.     Dr. Wernert's responsibilities also include the promulgation, administration, supervision, and control of the rules, regulations, and laws related to the provision and coordination of all the institutional and community-based disability and health clinical programs, medical services, residential services, and habilitation services offered by the state of Indiana through FSSA to those citizens of the state who are entitled to receive such services, including those community-based habilitation programs and services provided by FSSA's Division of Aging and Rehabilitation Services, and Division of Aging.

26.     Director Snyder is charged with the responsibility for the policies, practices, and operations of the Division of Aging.  Her responsibilities include, without limitation, promulgation, administration, supervision, and control of the rules, regulations, and laws related to the development and provision and coordination of all the institutional and community-based habilitation programs and services offered by the state of Indiana through FSSA and the Division of Aging, and the coordination of Medicaid services to those citizens of the State of Indiana who are entitled to receive such services.

27.     Director Moser is charged with the responsibility for the policies, practices, and operations of the OMPP.   His responsibilities include, but are not limited to, promulgation, administration, supervision and control of the rules, regulations, and laws related to Medicaid programs in the State of Indiana, the setting of compensation rates, and the coordination of Medicaid services to those citizens of the state of Indiana who are entitled to receive such services.

28.     On information and belief, on or about October 15, 2016, Vaughn's home-based agency stopped providing her with full coverage home health care service (which was then approximately 18-20 hours/day). Two of Vaughn's regular nurses offered to continue caring for her for a limited number of shifts. Subsequently, with the assistance of these nurses, families and friends, Vaughn self-managed her own care for nearly three months.

29.     On or about January 6, 2016, Vaughn was admitted to Methodist Hospital  for medical care for which a brief hospital stay was required. Vaughn's condition was treated and resolved within a week.

30.     Vaughn met her discharge criteria and realized the maximum benefit of in-patient treatment, but remained at Methodist Hospital for over ten months, because no home health care agency would assume responsibility for her care, citing, on information and belief, inadequate reimbursement for the level of staffing required by Vaughn.

31.     Plaintiff's friends, Methodist Hospital and CICOA (central Indiana's area agency on aging coordinating services for older adults), have made several attempts but failed at finding a home health care agency to care for Plaintiff.

32.     After Vaughn's transfer to a nursing home on November 25, 2016, no home health care agency will assume responsibility for her care, on information and belief, due to inadequate reimbursement rates from FSSA.

33.     On information and belief, Vaughn's health care providers have opined that Vaughn's institutionalization at a hospital or nursing home expose her to an ongoing risk of infection. They believe that Vaughn does not require hospitalization, and a nursing facility is also inappropriate. Instead, the best plan of care for Vaughn is to be cared for at home.

34.     Defendants have failed to provide Plaintiff with appropriate home-based treatment; have failed to pay home health care agencies appropriate rates in order to adequately integrate Vaughn in the community; and have failed to identify an

appropriate community placement that could serve Vaughn for the foreseeable future. Consequently, Vaughn must remain institutionalized indefinitely.

35.     Defendants have denied Vaughn adequate community-based or home-based services and supports in the most integrated setting appropriate to her needs.

36.     As a result of the foregoing denial, Plaintiff has been and remains unnecessarily institutionalized; subjected to ongoing risks of infection and other complications; and segregated on the basis of her disabilities.

37.     As a result of Defendants' actions, inactions, and/or omissions, Plaintiff has suffered harm and is at substantial risk of continuing to suffer irreparable harm if she is not discharged in a reasonably prompt manner from the nursing facility to an appropriate community placement.

38.     At all times relevant herein, Defendants, in their official capacities, were and are under an affirmative obligation to make their programs, services, and activities accessible to otherwise qualified individuals with disabilities under Title II of the ADA, Section 504, and the regulations promulgated thereto.

39.     At all times relevant herein, Defendants knew or should have known of the policies, practices, acts, omissions, and conditions alleged herein.

40.     Defendants are responsible for providing home or community-based residential placements for Plaintiff, who is medically ready for discharge to home.

41.     Defendants have failed to identify a community placement for Plaintiff, and have failed to resolve the non-clinical barriers to the Plaintiff's discharge to home.

42.     Plaintiff's current institutionalization is not based on any reason related to Plaintiff's medical condition. Instead, she remains institutionalized because of Defendants' failure to identify a community provider.

43.     Plaintiff continues to reside indefinitely in an environment where she is exposed to an elevated risk of harm.

44.     Plaintiff wishes and has demanded to be discharged to her home with necessary individualized supports.

45.     Plaintiff's continued institutionalization is not based upon a professional determination of her doctors and clinicians.  Rather, it is caused by Defendants' failure to identify and/or retain a community placement for her.

46.     Defendants contract with an array of private supportive living providers of home-based, individualized support services for clients.  In these placements, clients may up to receive twenty-four hour a day rehabilitative and support services.

47.     Defendants enter into individual contracts with providers to serve clients for a rate agreed to by providers and Defendants.

48.     Defendants receive federal funding under Medicaid's HCBS to pay for contracted and community-based support services.  Plaintiff satisfies the eligibility criteria to receive services from a private supportive-living provider who contracts with Defendants.

49.     Defendants have not identified a private provider who is willing to provide community-based support services to Plaintiff; have not taken adequate steps to identify and/or compensate such a provider; and have failed to appropriately offer Plaintiff state-

provided community-based support services.

50.     Due to Defendants' failure to identify and/or compensate a private provider for community-based support services, and/or their refusal to allow Plaintiff to self-direct these services, Defendants lack a plan that is reasonably likely to secure community-based services in the most integrated setting appropriate to Plaintiff's needs within an appropriate period of time.

51.     Plaintiff has been and is being harmed by her lengthy hospital stay, her current nursing-home stay, and the delay in her discharge to home.

52.     On information and belief, Vaughn's health has decreased substantially since she was institutionalized in January 2016.

53.     If Defendants fail to secure a community provider for Vaughn, she is at substantial risk of suffering irreparable harm. The longer Vaughn remains institutionalized, the worse her health will become.

54.     Plaintiff has no other adequate remedy at law.

## V.  Legal Claims

### Count I
### The Americans with Disabilities Act

55.     Each paragraph of this *Complaint* is incorporated as if fully restated herein.

56.     Plaintiff is a qualified individual with a disability, who is eligible to receive state and federally funded health and supportive living services.  She is protected under the ADA because she has physical disabilities that substantially limit one or more major life activities, including her ability to interact with others, provide self-care, and work.  42

U.S.C. §§ 12131(2), 12132.

57.     FSSA is a "public entity" within the meaning of ADA. 42 U.S.C. § 12131(1)(B).

58.     Defendants violate Title II of the ADA, 42 U.S.C. § 12132; and 28 C.F.R. § 35.130(d), 41.51(d), by excluding Vaughn from participating in FSSA's services, programs or entities, and failing to provide Plaintiff with services in the most integrated setting appropriate to her needs for the following reasons:

59.     Vaughn can, with appropriate supports and individualized services, live at home. Vaughn long ago reached maximum benefit of treatment from Methodist and the most integrated setting appropriate to her needs is in a home-based supportive living placement.

60.     Continued segregation and institutionalization is unjustified, unnecessary, and damaging to Vaughn's health and safety.

61.     Defendants could provide Plaintiff with a home-based placement in the most integrated setting appropriate to her needs without an undue burden or fundamental alteration to their programs and services.

62.     Defendants have no plan in place to provide Plaintiff with services in the most integrated setting appropriate to her needs.

63.     Defendants violate 28 C.F.R. §35.130(b)(3)(i) by effectively subjecting Vaughn to continued unnecessary segregation and institutionalization through, without limitation, the following omissions:

        a.      Defendants have failed to use funding to support state-provided

community-based programs so that Vaughn could be discharged promptly when

private providers are unavailable; and

b.      Defendants have failed to develop sufficient community-based or

home-based services that can meet the special treatment needs of those such as

Vaughn.

64.     Defendants violate Title II of the ADA, 28 C.F.R. § 35.130(b)(7) by failing

to make reasonable modifications in their policies, practices and procedures to enable

Vaughn to fully and equally participate in and enjoy Defendants' public services,

programs and activities, for the following reasons:

a.      Defendants have failed to modify FSSA policies, practices, and

procedures to provide Vaughn with state community-based services; and

b.      Defendants have failed to modify FSSA policies, practices, and

procedures to develop sufficient community based services that can meet the

treatment needs of patients like Vaughn.

65.     As a result of the foregoing acts, omissions and failures of Defendants,

Plaintiff has suffered and will continue to suffer physical injury and emotional distress, loss

of liberty and loss of opportunities. Plaintiff will continue to suffer such deprivations

absent relief from this Court.

## Count II
## Section 504 of the Rehabilitation Act of 1973

65.     Each paragraph of this *Complaint* is incorporated as if fully restated herein.

66.     Plaintiff is a qualified individual with a disability protected under Section

12

504, 29 U.S.C. § 794, because she has physical disabilities that substantially limit one or more major life activities, including her ability to interact with others, provide self-care, and work. She is eligible to receive state and federally-funded health and supportive-living services. 29 U.S.C. § 705 (20) (B).

67.     Defendants and FSSA receive federal funding through Title XIX of the Social Security Act, and are subject to Section 504. 29 U.S.C. §§ 794(a), 794(b)(1)(A).

68.     Defendants violate Section 504 and 45 C.F.R. § 84.4(b)(2) by failing to provide Vaughn with an opportunity to participate in, or benefit from, services in the most integrated setting appropriate to her needs equal to that provided others, for the following reasons:

a.     Vaughn can, with appropriate supports and individualized services, live in a home-based program for individuals with physical disabilities. Plaintiff has reached maximum benefit of treatment from her institutionalization and the most integrated setting appropriate to her needs is a home-based supportive living placement;

b.     Continued segregation and institutionalization is unjustified, unnecessary, and damaging to Vaughn's health and safety;

c.     Defendants could provide Vaughn with a home-based placement in the most integrated setting appropriate to her needs without an undue burden or fundamental alteration to their programs and services; and

d.     Defendants have no plan in place to provide Vaughn with services in the most integrated setting appropriate to her needs.

69.     Defendants violate Section 504 and 45 C.F.R. § 84.4(b)(4)(i), by using methods of administration that have the effect of subjecting Plaintiff to continued unnecessary segregation and institutionalization through the following failures or omissions:

a.     Defendants fail to use funding to support state-provided home-based programs so that Vaughn could be discharged promptly when private providers are unavailable; and

b.     Defendants fail to develop sufficient community-based or home-based services that can meet the special treatment needs of hospital residents such as Plaintiff.  Instead, Defendants' limited menu of community-based services into which residents, such as Plaintiff, must fit if they are to be discharged, has resulted in Plaintiff's continued and unnecessary institutionalization.

70.     As a proximate result of the foregoing acts, omissions and failures of Defendants, Plaintiff has suffered and will continue to suffer physical injury and emotional distress, loss of liberty and loss of opportunities. Plaintiff will continue to suffer such deprivations absent relief from this Court.

### Count III
### Medicaid Act – 42 U.S.C. § 1396a

71.     Each paragraph of this *Complaint* is incorporated as if fully restated herein.

72.     Defendants, while acting under color of law, have violated and are violating Plaintiff's rights held pursuant to 42 U.S.C. § 1396a(a)(8) by failing to provide, over the relevant timeframe discussed above, appropriate and adequate funding for

14

community-based services, or any accommodation of Plaintiff, with reasonable promptness.

73.     The foregoing failures are violations of Plaintiff's rights conferred by the Medicaid Act, 42 U.S.C. § 1396a, and implementing regulations.

74.     As a proximate result of the foregoing acts, omissions and failures of Defendants, Plaintiff has suffered and will continue to suffer physical injury and emotional distress, loss of liberty and loss of opportunities. Plaintiff will continue to suffer such deprivations absent relief from this Court.

## VI.     Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that this Court:

1.     Assume jurisdiction over this action;

2.     Order and declare that Defendants' actions and omissions described herein violate the ADA, Section 504 and the Medicaid Act.

3.     Preliminarily and permanently enjoin Defendants from further violating Vaughn's rights under the ADA, Section 504 and the Medicaid Act, and specifically require Defendants to:

   a.     Provide Vaughn with treatment services that are consistent with the professional judgments of her treating professionals;

   b.     Identify and adequately fund an appropriate community provider to provide transition services to Vaughn, and to provide her with community-based supportive living services;

       c.      Cease discriminating against Vaughn on the basis of her disability;

       d.      Cease restricting Vaughn's liberty interest by unnecessarily institutionalizing her;

4.      Allow Vaughn to self-direct her home health care treatment and providers;

5.      Award Vaughn her expenses, costs and reasonable attorney's fees pursuant to 42 U.S.C. §§ 1988, 12205 and 29 U.S.C. § 794a(b); and

6.      Grant such other and further relief the Court deems just and proper.

Respectfully submitted,

SNIDERMAN NGUYEN LLP


*s/ Mark W. Sniderman*
Mark W. Sniderman
47 S. Meridian St., Ste. 400
Indianapolis, IN  46204
(317) 361-4700 Tel
(317) 464-5111 Fx
mark@snlawyers.com